UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:07-CR-181-SDJ |
| | § | |
| TIMOTHY LEE YORK | § | |

## MEMORANDUM OPINION AND ORDER

Years ago, the State of Texas brought a forfeiture proceeding against Timothy Lee York incident to his arrest. *United States v. York*, 600 F.3d 347, 351–52 (5th Cir. 2010). Ultimately, the State was awarded York's car and around $865 cash found in the vehicle. *Id.* at 352. Angry at the presiding judge, York decided to retaliate. He made a Molotov cocktail by pouring gasoline into a bottle of Jack Daniels whiskey and using his checkbook as a wick. *Id.* He then threw the Molotov cocktail against the boarded window of the Cooke County Courthouse, where the judge's chambers were located, causing a fire. *Id.*

York was indicted on three counts: (1) arson, in violation of 18 U.S.C. § 844(f)(1); (2) carrying a destructive device in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(b); and (3) possession of a firearm not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d). While awaiting trial, York assaulted his roommate in the Seagoville Correctional Facility, attempting to strangle him with a ligature. This attack resulted in additional charges against York in the Northern District of Texas.[1]

---

[1] During his trial, York's former girlfriend testified that he had assaulted her in a similar manner. *York*, 600 F.3d at 359.

1

Following a jury trial, York was convicted on all three counts and sentenced to a total term of 497 months imprisonment. (Dkt. #48). York has moved for compassionate release. He contends that extraordinary and compelling reasons exist for a reduction based on (1) his "unusually long" sentence and alleged changes in the law, (2) the fact that he elected to go to trial, lost, and received a longer sentence than he would have received had he pleaded guilty, (3) his alleged history of mental illness that preexisted his conviction and sentence, and (4) his rehabilitation. The motion will be denied.

### I. Compassionate-Release Motions

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id*. The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024) (quotation omitted).

Because all three requirements must be met, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's

weighing of the [§] 3553(a) factors can independently support its judgment." *Id.* at *2 (quotation omitted). The sentencing factors under 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). District courts have broad discretion in considering these factors. As the Supreme Court has observed, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)).

In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## II. DISCUSSION

### A. York's Failures to Meet the Exhaustion Requirement Doom His Motion.

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or

3

the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" York alleges that he exhausted his administrative remedies before filing this motion. (Dkt. #73-1 at 1). The Government contends that, except as to his rehabilitation argument, York failed to exhaust his administrative remedies. (Dkt. #79). The Court agrees with the Government.

In his reduction-in-sentence request made to the BOP, York checked the box for "Other—Extraordinary and compelling Circumstance" and hand-wrote the following: "Change in law. unusually long sentence. mental health. trial penalty. rehabilitation." (Dkt. #79-1). Although the categories York raised in his request to the warden broadly match the grounds York has presented to the Court, they failed to fulfill the purpose of the exhaustion requirement—to allow the BOP an opportunity to fairly evaluate the nature of the prisoner's request to decide whether to make a motion on the inmate's behalf. A prisoner must, at the very least, provide the BOP with the "general basis for relief" such that "the BOP has the information necessary to investigate such grounds." *United States v. Latin*, 2022 WL 2488639, at *3 (D. Hawai'i July 6, 2022) (citing *United States v. Clutts*, 2020 WL 6531915, at *4 (N.D. Iowa Nov. 5, 2020)).

York's request to the warden largely failed to do that. For example, the words "Change in law" that York wrote, with nothing else, provide insufficient information for the BOP to evaluate this claim. And York's statement, made later in the same form, that "The law has changed and I would no longer face 41.5 years[,]" fails to add any meaningful further information. *See* (Dkt. #79-1). Absent some indication of what

4

law(s) York is referencing, the BOP could not be expected to determine what change in law York was referencing, how it impacted his sentence, or why it amounted to an extraordinary and compelling circumstance justifying a sentence reduction. Thus, York's "change in law" argument was not sufficiently exhausted.

Similarly, York's cursory reference to "mental health" was also insufficient to put the BOP on notice of the nature of York's claim. *See* (Dkt. #79-1). York stated in the request form that "my mental health is stable cause of positive choices I've made." (Dkt. #79-1). But before this Court, York's claim is not that his mental health is good now, but rather that it was so bad at the time he committed the offense that it should have been deemed a mitigating factor at sentencing, and that the Court should rectify that "error" now by way of compassionate release. *Compare* (Dkt. #79-1) *with* (Dkt. #73). Because this "mental health" claim was not presented to the BOP, it was not exhausted.

York's equally cursory reference to "trial penalty" in his request to the warden was also insufficient for the BOP to determine the basis for this claim or why it should entitle York to a sentence reduction. *See* (Dkt. #79-1).

As the Government agrees, York exhausted his administrative remedies in regard to his "rehabilitation" claim. However, because "rehabilitation" alone is insufficient to support compassionate release, and all of York's other claims must be denied for failure to exhaust administrative remedies, his motion must fail at the outset.

5

**B. The 3553(a) Factors Also Do Not Favor Compassionate Release.**

Although York's compassionate-release motion must be denied due to his failure to exhaust administrative remedies, *see supra* Part II.A, it is also substantively meritless. As described herein, York provides four purported "extraordinary and compelling" reasons for a reduction in his sentence, presumably to time served. First, York believes that he is serving an "unusually long" sentence that would be shorter if he were sentenced today, based on changes in the law. Second, York maintains that his decision to go to trial rather than enter a guilty plea amounted to a "trial penalty." Third, York broadly references his history of mental illness. And fourth, York points to his alleged rehabilitation while in prison.

The Court need not consider, however, whether the length of York's sentence, or his alleged "trial penalty" and improved mental health, taken together with his purported rehabilitation, provide extraordinary and compelling reasons for compassionate release. That is because the Court has independently reviewed the sentencing factors under 18 U.S.C. § 3553(a), and they counsel against York's early release. *See United States v. Grams*, No. 24-50686, 2025 WL 1079074, at *1 (5th Cir. Apr. 10, 2025) ("because the district court denied compassionate release based on its consideration of the applicable § 3553(a) factors, it was not required to consider Grams's arguments in support of extraordinary and compelling reasons").

York's offense, creating and then hurling a Molotov cocktail at a courthouse in retaliation for a judge's adverse ruling, targeting the location of her chambers, is an alarming crime of violence against a judicial officer. The attack was deliberate and

6

premeditated. After the attack, investigators found that York possessed personal information about the targeted judge and a photograph of her, along with several maps and directions to her residence. The record also shows that York claimed affiliation with the Aryan Brotherhood and discussed blowing up the courthouse. (Dkt. #45 ¶ 8).

    Beyond the instant offenses, York's criminal history is troubling. A number of his prior convictions involve violence or threats of violence. For example, York obtained a prior conviction for battery, an incident that involved York demanding money from a victim outside a pool hall, and, when the victim refused, York hit him on the head with a beer bottle, kicked him several times, and threatened to kill him. (Dkt. #45 ¶ 38). York also has two convictions for fighting in public, (Dkt. #45 ¶¶ 41, 42), and one for making a terroristic threat, (Dkt. #45 ¶ 44). For the latter offense, York threatened to kill a female occupant of a home after escaping from a mental hospital in Arlington, Texas. (Dkt. #45 ¶ 44). York also has convictions for operating a motor vehicle while under the influence of an intoxicant and attempting to elude an officer. (Dkt. #45 ¶ 45). These offenses arose from an episode in which York entered a gas station and told the clerk that he wanted some gas and cigarettes but had no money, and that if the clerk had a problem with it he (York) would shoot the clerk. (Dkt. #45 ¶ 45). York also has two more convictions for driving under the influence, (Dkt. #45 ¶¶ 39, 40), one of which involved York traveling at a high rate of speed when he lost control of his car and hit a pole, (Dkt. #45 ¶ 39).

7

Finally, there is the episode described herein when, while awaiting trial in this case, York assaulted his roommate in the Seagoville Federal Correctional Institution by attempting to strangle him with a ligature, resulting in additional charges in the Northern District of Texas. (Dkt. #45 ¶ 51).

York is incarcerated for committing a horrific crime. Throwing a Molotov cocktail at a courthouse poses a grave threat to judicial security and the rule of law. Worse, the record shows that York targeted a specific judicial officer, attempting to do her great physical harm. Moreover, such an act of violence risks not only physical harm to individuals within the targeted building, but also the destruction of vital infrastructure, potentially disrupting court operations and undermining public confidence in the judiciary. York's criminal history further demonstrates that he is a great danger to the public, as he has repeatedly engaged in violent and life-threatening criminal behavior.

Granting York early release would not reflect the seriousness of his offense, nor would it promote respect for the law or provide just punishment. The Court also concludes that granting early release to York would not afford adequate deterrence to criminal conduct or protect the public from further, and likely violent, crimes of this Defendant. For these reasons, the 3553(a) factors confirm that York's motion should be denied.

### III. Conclusion

For these reasons, Defendant Timothy Lee York's Motion for Compassionate Release Under 3582(c)(1)(A)(i), (Dkt. #73), is therefore **DENIED**.

**So ORDERED and SIGNED this 14th day of May, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE